UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : 04 Civ 1584 (RJH) |
| MOISES SABA MASRI and<br>ALBERT MEYER SUTTON, | : |
| Defendants. | : |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

Plaintiff Securities and Exchange Commission ("SEC") submits the following Response to Defendants' Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Southern District of New York, and the individual rules of this Court.

**I.  RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1-56:  Plaintiff admits these paragraphs for purposes of this motion only.

57.  Plaintiff admits this paragraph for purposes of this motion only, with the qualification that the overall Tentafin account was facing a cash deficit due to Fed call requirements. *See* Declaration of David A. Feldman, dated May 16, 2006 ("Feldman Dec.") Ex. 30 (Guinan Tr.) at 140:17-24; 141:19-25; 142:1-6.

58-66: Plaintiff admits these paragraphs for purposes of this motion only.

67. Plaintiff objects to paragraph 67 on the grounds that it is speculative, conclusory, and not a fact that can be determined based on record evidence.

68. Plaintiff objects to paragraph 68 on the grounds that defendants' expert asserts that it would actually cost Saba approximately $161,250 to repurchase the put options and close out the position (Feldman Dec. Ex. 27 at 13-14), assuming that such a result could even be accomplished on August 20, 1999.  The feasibility and cost of closing out the position will be determined at trial.

69. Plaintiff admits this paragraph for purposes of this motion only, with the qualification that the overall Tentafin account was facing a cash deficit due to Fed call requirements.  *See* Feldman Dec. Ex. 30 at 140:17-24, 141:19-25, 142:1-6.

70. Plaintiff admits this paragraph for purposes of this motion only.

71. Plaintiff objects to paragraph 71 on the grounds that it is speculative, conclusory, and not a fact that can be determined based on record evidence.

72. Plaintiff admits this paragraph for purposes of this motion only.

73. Plaintiff objects to paragraph 73 on the basis that, according to Feldman Dec. Ex. 27 Appendix 2 at 6, the ask price for TZA November 5 put options on August 20, 1999 appears to be 11/16.

74. Plaintiff objects to paragraph 74 and submits that the actual amount that Saba initially directed Sutton to purchase will be determined at trial. *See* Plaintiff's Statement of Additional Undisputed Material Facts, paragraphs 19-21, below; Sutton order ticket (Declaration of Ryan Farney, executed June 19, 2006 ("Farney Dec.") Ex. 8), which on its face has three different share amounts.

75. Plaintiff admits this paragraph for purposes of this motion only, with the qualification that the amount of the initial order received by Sutton will be determined at trial. *See* Plaintiff's Statement of Additional Undisputed Material Facts, paragraphs 19-21, below; Sutton order ticket (Farney Dec. Ex. 8), which on its face has three different share amounts.

76. Plaintiff objects to paragraph 76 on the basis that the amount of the initial order received by Sutton will be determined at trial, and that the last piece of the order effected by Sutton was placed with a limit above the prevailing best ask, suggesting an intent to purchase shares at greater than the lowest price. *See* Plaintiff's Statement of Additional Undisputed Material Facts, ¶¶ 19-21, below; NYSE merged order report (Farney Dec. Ex. 7); Sutton order ticket (Farney Dec. Ex. 8), which on its face has three different share amounts.

77-85: Plaintiff admits these paragraphs for purposes of this motion only.

86. Plaintiff objects to paragraph 86 on the basis that it is conclusory and not a fact that can be determined based on record evidence, and plaintiff disputes the purpose and effect of Saba's purchases.

87. Plaintiff objects to paragraph 87 on the basis that it is conclusory and not a fact that can be determined based on record evidence, and plaintiff disputes the purpose and effect of Saba's purchases.

88-92: Plaintiff admits these paragraphs for purposes of this motion only.

## II. PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS[1]

1. Albert Meyer Sutton ("Sutton") and Moises Saba Masri ("Saba") have been friends since the mid-1980s. Sutton Invest. Tr. (Farney Dec. Ex. 1) at 24:6-7, 25:4-10).

2. On August 20, 1999, based on a course of dealing between Saba and Sutton worked out over time, Sutton had authority to go an eighth (12.5 cents) above market price when filling an order if Saba did not place an upper limit on price. Feldman Dec. Ex. 28 (Saba Dep. Tr.) at 74:4-18.

3. In 1999, Saba did not check his options positions until the day they expired, because before the expiration, it was impossible to tell what the price of a security would do. Saba Invest. Tr. (Farney Dec. Ex. 2) at 64:19-25, 65:4-8.

4. At the start of the trading day on August 20, 1999, Saba controlled over two million shares of TZA in the Tentafin account and over 12 million shares in a joint account held with his father, Alberto Saba. Lowry Expert Report (Farney Dec. Ex. 3) at 5; Feldman Dec. Ex. 12 (Tentafin Stmt.); Alberto and Moises Saba joint account statement (Farney Dec. Ex. 4) at 5.

5. At the start of the trading day on August 20, 1999, the Tentafin account had a Fed call of $4,000,757.83. Feldman Dec. Ex. 20, at PER263.

6. On the New York Stock Exchange ("NYSE"), trades commonly go off at a price between the prevailing "best ask" and the prevailing "best bid." Buy orders are commonly executed above the midpoint between best bid and best ask, and sell orders are commonly executed below the midpoint between best bid and best ask. Harris Expert Report (Farney Dec. Ex. 5) at 8.

7. Just before the defendants began their series of transactions, the best bid for TZA was 4.973 and the most recent transaction in TZA had been executed at $5. Feldman Dec. Ex. 26 at CB00037.

---

[1] Citations have been made to exhibits attached to the Declaration of David A. Feldman where appropriate.

8. The order Sutton received from Saba for TZA on August 20, 1999 was a market order.  Feldman Dec. Ex. 29 (Sutton Dep. Tr.) at 120:24-25, 121:1-3.

9. A market order is generally an order that must be completely filled.  Feldman Dec. Ex. 29 (Sutton Dep. Tr.) at 11:3-13; Verdiger Dep. Tr. (Farney Dec. Ex. 6) at 35:7-12.

10. After Saba placed his order for TZA with Sutton on August 20, 1999, he left his office for the day and had no further communications with Sutton.  Feldman Dec. Ex. 28 (Saba Dep. Tr.) at 76: 12-25, 77:1-25, 78:1, 86:18-25, 87:1-11.

11. Saba's order was executed in seven discrete pieces by Ira Sabin with the following limits (in relation to the prevailing best ask) and which impact the best bid as follows:

| Time | Quantity | Price | Limit (Best ask at time of trade) | Best bid immediately after trade |
|---|---|---|---|---|
| 3:51:43 | 4,400 | 5.00 | 5.0625 (5.0625) | 4.9375 |
| 3:51:57 | 45,600 | 5.0625 | 5.0625 (5.0625) | 4.9375 |
| 3:54:51 | 18,700 | 5.0625 | 5.1875 (5.1875) | 5.125 |
| 3:55:09 | 31,300 | 5.1875 | 5.1875 (5.1875) | 5.125 |
| 3:57:34 | 25,000 | 5.1875 | 5.1875 (5.1875) | 5.0625 |
| 3:58:16 (unaffiliated order; not initiated by defendants) | 3,000 | 5.125 | Unknown (5.125) | 4.9375 |
| 3:59:00 | 20,000 | 5.125 | 5.125 (5.125) | 5.125 |
| 4:00:02 | 55,000 | 5.1875 | 5.375 (5.1875) | Market close |

Feldman Dec. Ex. 26 at CB00037-40; NYSE merged order report (Farney Dec. Ex. 7).

12. At 3:58:23 p.m. (EDT) on August 20, 1999, after Saba had purchased 125,000 shares of TZA, an unidentified trader executed a 3,000-share order for TZA.  This order caused the best bid for TZA to fall below $5.  Feldman Dec. Ex. 26 at CB00039.

13. After the 3,000-share unaffiliated trade was executed, Saba purchased 75,000 shares of TZA.  Feldman Dec. Ex. 26 at CB00039-40.

14. At the close of the market on August 20, 1999, the price and the best bid for TZA both closed above $5.  Feldman Dec. Ex. 26 at CB00040.

15. Saba's purchases on August 20, 1999, had the effect of "cleaning up" the shares then available at the NYSE best ask price. Lowry Expert Report (Farney Dec. Ex. 3) at 13.

5

16. The second, third and fifth pieces of the order that Sutton transmitted to Ira Sabin—which resulted in purchases of 50,000; 25,000; and 55,000 shares, respectively—were entered with limits of $5.1875 or greater and were filled or partially filled at a price of $5.1875. NYSE merged order report (Farney Dec. Ex. 7).

17. The final piece of Saba's order—55,000 shares—was entered with a limit of $5.375. NYSE merged order report (Farney Dec. Ex. 7).

18. Sutton wrote three different quantities of shares in the "quantity" box on the original order ticket for Saba's purchases: 100,000 (which was then crossed out); 150,000 (which was then crossed out); and 200,000. Sutton order ticket (Farney Dec. Ex. 8).

19. Sutton's usual practice, upon receiving an order from a client, is to write down the full quantity on the order ticket and then to attempt to fill the order, even if the order is subsequently filled in pieces. Feldman Dec. Ex. 29 (Sutton Dep. Tr.) at 79:25, 80:1-11.

20. The practice of writing down the full quantity in the "quantity" box on an order ticket is also the usual practice of Middlegate Securities. Verdiger Dep. Tr. (Farney Dec. Ex. 6) at 41:15-25, 43:1-4.

21. Saba's purchases in Tentafin's brokerage account comprised approximately 94% of all TZA buy-side activity during the last hour of trading on August 20, 1999 and 75% of all TZA buy-side activity for the day. Feldman Dec. Ex. 26 at CB00041.

22. Saba's 200,000 share purchase during the last ten minutes of trading on August 20, 1999 exceeded the average volume of shares traded over an entire day (for the previous 30 trading days) by 20,000 shares. Feldman Dec. Ex. 25.

23. Saba's series of trades in TZA on August 20, 1999 had the foreseeable effect of moving the price of TZA above $5. Harris Expert Report (Farney Dec. Ex. 5) at 9-12.

24. At the end of the trading day on August 20, 1999, the Fed call on Saba's Tentafin account had increased to an amount greater than $6 million, further increasing the account's overall cash shortfall. Feldman Dec. Ex. 30 (Guinan Dep. Tr.) at 141:19-25, 142:1-6.

25. At the end of the trading day, Esther Verdiger, Sutton's supervisor, reviewed Sutton's original order ticket and wrote in "N.H." and later "Not Held" on the ticket based on representations by Sutton to her that Saba's order had been a "market not held" order. Verdiger Dep. Tr. (Farney Dec. Ex. 6) at 24:15-25, 25:1-3 and 20-25, 26:1-5; Sutton order ticket (Farney Dec. Ex. 8); Sutton order ticket (Farney Dec. Ex. 9).

6

26. A "market not held" order is one for which the broker is not liable if the order is not completely filled. Verdiger Dep. Tr. (Farney Dec. Ex. 6) at 40:2-6.

27. Ira Sabin, Middlegate's clearing broker, testified that he believed that Saba's purchases of TZA were "held" orders as opposed to "not held"—which meant that Saba expected the order to be filled and not worked. Sabin Dep. Tr. (Farney Dec. Ex. 10) at 153:11-21, 17:19-22.

28. In 2002, Saba testified that he bought the 200,000 shares of TZA on August 20, 1999 in order to average down the cost of shares that he would be purchasing at $7.50 as a result of the assignment of August 7.5 puts. Saba Invest. Tr. (Farney Dec. Ex. 2) at 40:18-20.

29. According to Saba, the possibility of the August 5 puts being assigned to him (and thus the possibility of having to purchase 860,000 shares of TZA at $5) was not a factor in Saba's decision to purchase the 200,000 shares. Saba Invest. Tr. (Farney Dec. Ex. 2) at 64:6-11.

30. In his Wells submission to the SEC in 2003, Saba stated again that he bought the 200,000 shares to average down the August 7.5 puts. Saba Wells submission (Farney Dec. Ex. 11) at 6.

31. In 2005, Saba testified that he purchased the 200,000 shares of TZA on August 20, 1999, in order to cover November 5 call options that, if exercised, would have obligated Saba to sell 1,150,000 shares of TZA at $5. (Feldman Dec. Ex. 28 (Saba Dep. Tr.) at 48:2-5)

32. Saba did not state, in either his 2002 investigative testimony or his 2003 Wells submission, that his purpose for purchasing the 200,000 shares of TZA on August 20, 1999, was to cover the November 5 calls. Saba Invest. Tr. (Farney Dec. Ex. 2); Saba Wells submission (Farney Dec. Ex. 11).

                Respectfully submitted,

                s/Ryan Farney_____
                Alan M. Lieberman (AL 6517)
                Ryan Farney (RF 6050)

                Attorneys for Plaintiff
                Securities and Exchange Commission
                100 F Street, N.E.
                Washington, DC 20549-4030
                (202) 551-4474 (Lieberman)
                (202) 772-9245 (Fax)

Dated: June 19, 2006.